[Cite as *Ellis v. Skinner*, 2022-Ohio-4793.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

EDWARD ELLIS,

      Petitioner-Appellee,

- vs -

AMANDA SKINNER,

      Respondent-Appellant.

**CASE NO. 2022-G-0009**

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2020 SP 000717

## O P I N I O N

Decided: December 30, 2022
Judgment: Affirmed

*Vincent A. Stafford*, Stafford Law Co., LPA, 55 Erieview Plaza, 5th Floor, Cleveland, OH 44114, and *James T. Tyminski, Jr.*, Gallagher Sharp, LLP, 1215 Superior Avenue, 7th Floor, Cleveland, OH 44114 (For Petitioner-Appellee).

*Jay Milano* and *Kate Pruchnicki*, Milano Attorneys at Law, Milano Law Building, 2639 Wooster Road, Rocky River, OH 44116 (For Respondent-Appellant).

JOHN J. EKLUND, P.J.

{¶1}    Appellant, Amanda Skinner, appeals the Geauga County Court of Common Pleas' judgment entry granting Appellee, Edward Ellis', petition for a Civil Stalking Protection Order ("CSPO"), pursuant to R.C. 2903.214.

{¶2}    After a review of the record and applicable case law, we affirm the judgment of the Geauga County Court of Common Pleas.  For the following reasons, we find that: (1) It was not against the manifest weight of the evidence for the trial court to find that Skinner engaged in a "pattern of conduct" and that Ellis was a resident of Geauga County;

(2) Skinner did not present evidence beyond the scope of his petition because he testified to relevant evidence regarding his relationship with Skinner and her former employees provided relevant testimony; (3) the court did not abuse its discretion in denying Skinner's motion for a mistrial because there were not extreme circumstances where a fair trial was no longer possible and a mistrial was required to meet the ends of justice; (4) the trial court did not err in denying Skinner's motion to disqualify the magistrate because a hearing was not required on the motion and Skinner did not provide any basis, nor did we find any basis, why the magistrate was impartial or biased; (5) the trial court did not deprive Skinner of an opportunity to be heard because Ellis properly objected to irrelevant evidence on direct and cross examination; (6) the court did not abuse its discretion in not enforcing Skinner's subpoena duces tecum because the requested documents were Skinner's own produced in discovery; (7) the court did not abuse its discretion in admitting evidence that had been altered because the court did not consider those documents; and (8) the court did not abuse its discretion in ordering electronic monitoring because it may order monitoring on its own motion.

**Facts and Procedural History**

{¶3} Skinner and Ellis met in May 2020 and began an on and off dating relationship continuing through October 2020. The parties initially broke-up in June 2020, but reconciled twice before permanently ending their relationship in October 2020.

{¶4} On November 12, 2020, Ellis petitioned for a CSPO. The same day, the court granted his petition and issued an ex parte CSPO.

{¶5} A full hearing was held on September 14, 2021, October 1, 2021, and October 6, 2021. The hearing was rescheduled five times between the initial petition in

2

November 2020 and the full hearing in September 2020 upon the hiring and withdrawal of several attorneys for Skinner's representation.

{¶6} At the September 14, 2021 hearing, Ellis swore under oath his name and that he was a resident of Geauga County. (T.p. 33). Ellis' attorney then stated, "[p]ursuant to Rule 65, your honor, we'll maintain the confidentiality of his current address." There was no objection.

{¶7} Ellis testified that he had first met Skinner through an online dating application in May 2020, but ended the relationship mid-June when she became "smothering," "requiring to be first over my children," and insisted that they "shared each other's location 24 hours a day." (T.p. 36). Ellis testified that after the initial break-up, he discovered multiple social media accounts in his name that he had not created himself. (T.p. 41). Ellis stated that he believed Skinner created the accounts because they had pictures of them together to which only she had access. (T.p. 41). He also testified that the fake account was sent to his ex-wife, and had pictures of him at a "gentleman's club." (T.p. 41). Ellis testified to several "unusual events" occurring after the break-up, including that Skinner "broke into my home in the middle of the night. I was showering. I stood out of my shower and she was standing there." (T.p. 284). Ellis also testified that Skinner stood outside of his brother's home staring, and that when he emailed her about it, she replied "I am not nuts, Ed. I am sad." (T.p. 286.). Ellis also described "aggressive text messages" that Skinner sent to two of his friends "posing physical harm" to them. (T.p. 293). Ellis described that Skinner started blackmailing him for money and that he was in such fear that "I got to the point where I was setting my security systems and leaving my dogs by the front door." (T.p. 334). Lastly, Ellis testified that when he received discovery

3

from Skinner's former attorney on this case, the evidence was "very clear that they were cut and paste." (T.p. 289). Ellis then testified to each piece of evidence at issue and described to the court how they had been altered.

{¶8} During Ellis' testimony on the social media accounts, Skinner's attorney objected, arguing that Ellis' attorney had not served copies of all exhibits listed and alleged that Ellis manipulated some of the documents. (T.p. 43). Ellis' attorney then explained that many of the documents were Skinner's own evidence (such as texts between her and her sister), and that her former attorney should have sent them the full case file. (T.p. 63). The magistrate ended Ellis' testimony to give the parties time to retrieve all the evidence listed and proceeded with Ellis' three witnesses because their testimonies were not related to the alleged missing evidence. (T.p. 69).

{¶9} Ellis' first witness was Lexi Lombardo. Lombardo testified that she worked at Skinner's salon between "January or February 2020" and June 2021. (T.p. 77). Lombardo also testified that Skinner "indicated" that she had contacted Ellis' ex-wife and his dad after the break-up. (T.p. 82, 90). Lombardo testified that she saw an "Ed Ellis Facebook page on the [cell] phone" that Skinner owned for her business. (T.p. 83). Lombardo also testified that she saw a dating application profile in Ellis' name on one of Skinner's phones. (T.p. 84). Lombardo testified that she believed Skinner had created these profiles in Ellis' name. (T.p. 89). Lombardo then testified that Skinner "offered like us 20 bucks to go spray paint his [Ellis'] garage." (T.p. 86). Lombardo stated that Skinner said "[s]he was going to take everything from [Ellis] and ruin his life." (T.p. 89, 90). Lastly, Lombardo testified that she was scared of and intimidated by Skinner and that Skinner sat across from her, staring at her, before Lombardo testified. (T.p. 94).

4

{¶10} Ellis' second witness was Ashley Moore. Moore testified that she worked for Skinner for six years prior to leaving in March 2021. (T.p. 128). Moore testified that Skinner confided in her that she made fake social media accounts in Ellis' name and that she directed another employee, Ellen Bertsch, to create more fake accounts. (T.p. 134). Moore also testified that she was scared of Skinner, was afraid of what she would do to her for testifying, that Skinner followed her sister home two months before the hearing, and that before testifying Skinner sat directly across from her and stared at her. (T.p. 137, 138, 140).

{¶11} At the end of the September 14, 2021 hearing, Ellis' attorney orally moved for electronic monitoring of Skinner, due to Ellis' fear that she would attempt to intimidate him before the next hearing. (T.p. 166). The magistrate said she would consider the motion and allowed both parties a week to brief the issue. The motion was later granted.

{¶12} On October 1, 2021, the hearing continued. Between the September and October hearings, Skinner's attorneys filed 2 motions: (1) Motion for a mistrial because of Ellis' attorney's "antics" at the September 14 hearing; and (2) Motion for disqualification of the magistrate for failure to keep courtroom decorum and maintain control. When the October 1 hearing began, the motions had not been ruled on, and Skinner's attorneys objected to continuing. The magistrate replied that the motions will be ruled on, but "[r]ight now, we are going forward with the hearing. Any other motions will be ruled upon in due time by the appropriate person." (T.p. 185). Skinner's attorneys then alleged that they had filed two motions within 24 hours prior to the October 1 hearing: (1) A supplement to the motion for a mistrial for altering evidence; and (2) a motion to establish jurisdiction because Ellis had not stated his exact residence on the record. The magistrate retrieved

5

a new copy of the docket, which had no indication of any recent filings, and proceeded with the hearing.

{¶13} On October 6, 2021, the hearing resumed. Skinner testified that the allegations against her were "crazy" and "far fetched" and denied them all. (T.p. 763).

{¶14} On October 29, 2021, the court denied Skinner's motions for a mistrial and to disqualify the magistrate.

{¶15} On November 10, 2021, the magistrate issued a decision granting Ellis' petition for a CSPO. On November 29, 2021, the judge adopted the magistrate's decision.

{¶16} Skinner timely appeals, raising nine assignments of error.

**Law and Analysis**

{¶17} First assignment of error: "The trial court erred and abused its discretion in granting a CSPO where the evidence was insufficient to sustain Appellee's petition."

{¶18} Second assignment of error: "The trial court's judgment granting the CSPO was against the manifest weight of the evidence."

{¶19} Skinner's first two assignments of error will be addressed together.[1]

{¶20} In considering whether a civil judgment tried to the bench is against the manifest weight of the evidence, an appellate court applies the same standard as is used in reviewing a criminal judgment. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17, *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001).

---

1. Typically, an appellate court reviews a trial court's adopting a magistrate's decision to grant a CSPO under an abuse of discretion. *Hayes v. Hayes*, 11th Dist. Lake No.2005-L-138, 2006-Ohio-6538, ¶ 10. Here, Appellant is not challenging the trial court's adopting the magistrate's decision; Appellant only challenges the court granting the petition arguing there was insufficient evidence and the court's judgment was against the manifest weight of the evidence. Hence, those are our standards of review.

{¶21} "'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the [factfinder] or whether the evidence is legally sufficient to support the [factfinder's] verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), citing Black's Law Dictionary (6 Ed.1990) 1433. The appellate court's standard of review for sufficiency of evidence is to determine, after viewing the evidence in a light most favorable to the petitioner, whether a rational trier of fact could find the essential elements proven to the requisite degree. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶22} When evaluating the sufficiency of the evidence, we do not consider its credibility or effect in inducing belief. *Thompkins* at 387. Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. *Id.* This naturally entails a review of the elements of the offense and a review of the petitioner's evidence. *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13.

{¶23} "Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [factfinder] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics but depends on its effect in inducing belief." *Thompkins* at 387. Whereas sufficiency relates to the evidence's adequacy, weight of the evidence relates the evidence's persuasiveness. *Id.* The reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost

7

its way and created such a manifest miscarriage of justice that the court's judgment must be reversed and a new trial ordered. *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶24} The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *State v. Landingham*, 11th Dist. Lake No. 2020-L-103, 2021-Ohio-4258, ¶ 22, quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). The trier of fact may believe or disbelieve any witness in whole or in part, considering the demeanor of the witness and the manner in which a witness testifies, the interest, if any, of the outcome of the case and the connection with either party. *Id.,* quoting *Antil* at 67. This court, engaging in the limited weighing of the evidence introduced at trial, is deferential to the weight and factual findings made by the jury. *State v. Brown*, 11th Dist. Trumbull No. 2002-T-0077, 2003-Ohio-7183, ¶ 52, citing *Thompkins* at 390 and *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph two of the syllabus.

{¶25} A finding that a judgment is supported by the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

{¶26} We begin by analyzing whether it was against the manifest weight of the evidence for the trial court to grant Ellis' petition for a CSPO.

{¶27} In her first and second assignments, Skinner asserts that Ellis did not establish that she had engaged in a "pattern of conduct" (and if he did, that he contributed

8

to that pattern of conduct), and that Ellis failed to establish jurisdiction and prove residency in Geauga County.

{¶28} Pursuant to R.C. 2903.214(C)(1), a person may seek a protection order based upon an "allegation that the respondent engaged in a violation of [R.C. 2903.211, Menacing by Stalking] against the person to be protected by the protection order * * *." The petitioner must demonstrate, "by a preponderance of the evidence," that the petitioner is entitled to a CSPO. *Tuuri v. Snyder*, 11th Dist. Geauga No. 2000–G–2325, 2002-Ohio-2107, ¶ 12.

{¶29} R.C. 2903.211(A)(1) provides: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm * * * to the other person or cause mental distress to the other person * * *."

{¶30} The "pattern of conduct" required for a civil stalking protection order is defined as "two or more actions or incidents closely related in time." R.C. 2903.211(D)(1). When applying R.C. 2903.211(D)(1), the court "must take into consideration everything, i.e., * * * the phone calls, the thinly veiled threats, and the face-to-face meetings between the parties, 'even if some of [the respondent's] actions comprising this behavior, considered in isolation might not appear to be particularly threatening.'" (Citation omitted.) *Tuuri* at ¶ 18.

{¶31} Skinner first contends that Ellis did not establish that she engaged in a "pattern of conduct" as required under R.C. 2903.211(A)(1). The evidence, including text messages and witness testimony, shows that Skinner appeared at Ellis' brother's house uninvited, frequently drove past Ellis' house, entered his house once while he was showering, created fake social media accounts in Ellis' name, sent threatening messages

9

to his ex-wife and close friends, and blackmailed him for money threatening to ruin his relationship with his ex-wife and children if he did not comply. All of these incidents were closely related in time between July 2020 and October 2020. Skinner asserts that Ellis contributed to the behavior by texting her several times, which included apologies from him, and even a brief reconciliation. Nevertheless, the weight of the evidence, including the text messages between them, shows that for the most part, Ellis continuously asked Skinner to stay away from him and his family, and that she continued to engage in a "pattern of conduct."

{¶32} The greater weight of the evidence (including all reasonable inferences and the credibility of all witnesses who testified) demonstrates that the court did not clearly lose its way and create such a manifest miscarriage of justice that the judgment must be reversed, and a new trial ordered. This is not the exceptional case in which the evidence weighs heavily against the outcome. Hence, it was not against the manifest weight of the evidence for the court to find that Skinner engaged in a pattern of conduct that knowingly caused Ellis to believe she would cause him physical harm or emotional distress.

{¶33} Since it was not against the manifest weight of the evidence for the court to grant the CSPO, that necessarily means the judgment was supported by sufficient evidence. *Arcaro* at ¶ 32.

{¶34} Skinner also asserts in her first assignment that Ellis "failed to present sufficient evidence to establish that he resides in Geauga County" and that the Geauga County Court of Common Pleas did not have jurisdiction to grant the petition.

10

Case No. 2022-G-0009

**{¶35}** Civ.R. 3(B)(10) provides that an action for a civil protection order may be commenced in the county in which the petitioner resides. When a petitioner seeks a civil protection order from a common pleas court in a county in which he does not reside, the court lacks subject matter jurisdiction over the case. *Reynolds v. Whitney*, 10th Dist. Franklin No. 03AP–1048, 2004–Ohio–1628, ¶ 8.

**{¶36}** Here, the record shows that Ellis swore under oath that he was a resident of Geauga County. Skinner testified that Ellis lived in Geauga County on Russell Road while they were dating. Skinner provides no basis or argument for why the trial court or this court should not have believed Ellis' residency claims.

**{¶37}** Skinner's first and second assignments of error are without merit.

**{¶38}** Third assignment of error: "The trial court erred and abused its discretion when it permitted Appellee to introduce evidence beyond the scope of Appellee's R.C. 2903.214 petition and affidavit for CSPO."

**{¶39}** Skinner asserts that the trial court erred by allowing Ellis to testify to events that occurred before October 2020 because those incidents were not included in his initial petition. Skinner also argues that the trial court erred by allowing her two former employees and ex-boyfriend to testify.

**{¶40}** Skinner fails in her brief to support her reasons why she was prejudiced by the testimony. Her argument alludes that the witness testimony was not relevant, and that Ellis' testimony of events prior to October were unexpected, "thereby divesting Appellant any opportunity to defend against the allegations at the full hearing."

**{¶41}** Under Evid.R. 402, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the

11

State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Nevertheless, "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

**{¶42}** We first address Ellis' testimony. His testimony of events and Skinner's "unusual" behavior starting in July 2020 following their first break-up was relevant because it had a tendency of Skinner's engaging in a "pattern of conduct" more probable. Skinner should have expected that Ellis would testify to all incidents after the break-up and not just the month before he petitioned for a CSPO.

**{¶43}** Next, we address the witness testimony. The testimony of Skinner's two former employees was relevant because they had knowledge of her anger towards Ellis after the break-up, and personally saw the social media accounts in Ellis' name on Skinner's personal and work phones. The testimony tended to make Skinner's creating the social media accounts more probable.

**{¶44}** One of Skinner's ex-boyfriends also testified. His testimony was that Skinner stalked, harassed, and blackmailed him following their break-up in similar ways to what Ellis described. Whether or not the ex-boyfriend's testimony was relevant, its admission was harmless error as there was overwhelming evidence in support of the matters suggested within the petition notwithstanding his testimony. Thus, Skinner was

12

not materially prejudiced by its admission. *State v. Webb*, 3rd Dist. Logan No. 80126, 2002-Ohio-2199, , ¶ 22.

**{¶45}** Appellant's third assignment of error is without merit.

**{¶46}** Fourth assignment of error: "The trial court erred and abused its discretion when it denied Appellant's motion for mistrial."

**{¶47}** Skinner asserts that her motion for mistrial should have been granted because of: (1) "Appellee's manipulation of discovery/evidence;" (2) "Appellee's undignified and discourteous conduct;" and (3) "the magistrate's failure to control the courtroom." Under this assignment, Skinner does not explain why she believes the "manipulation" of evidence required the court to grant a mistrial, but any argument regarding manipulating evidence that she makes will be addressed under the seventh and eighth assignments.

**{¶48}** "A trial court is entitled to broad discretion in considering a motion for a mistrial, and our standard of review is whether the trial court abused its discretion." *State v. Rosebrook*, 11th Dist. Geauga No. 2016-G-0099, 2017-Ohio-9261, ¶ 9, citing *State v. Love*, 7th Dist. Mahoning No. 02 CA 245, 2006-Ohio-1762, ¶ 95, citing *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990), paragraph one of the syllabus. "The decision to grant a mistrial 'is an extreme remedy only warranted in circumstances where a fair trial is no longer possible and it is required to meet the ends of justice.'" *Rosebrook* at ¶ 9, quoting *State v. Bigsby*, 7th Dist. Mahoning No. 12 MA 74, 2013-Ohio-5641, ¶ 58, citing *State v. Jones*, 83 Ohio App.3d 723, 615 N.E.2d 713 (2d Dist.1990). "A mistrial will only be granted when the substantial rights of a party are adversely affected." *Rosebrook* at ¶ 9, citing *State v. Lukens*, 66 Ohio App.3d 794, 809, 586 N.E.2d 1099 (10th Dist.1990).

13

{¶49} Here, Skinner first argues that Ellis' attorney affected her substantial rights to a fair trial because he "rendered Appellant's efforts to effectively cross-examine the parties and their witnesses essentially futile." After a thorough review of the record, the attorney's objections were merely to preserve the record, or to have opposing counsel rephrase a question. They did not rise to a level warranting the extreme remedy of a mistrial.

{¶50} Skinner also argues that the court should have declared a mistrial because of "Appellee's undignified and discourteous conduct" and "the magistrate's failure to control the courtroom." Our thorough review of the record reveals that when Ellis' attorney did stand up or interrupt inappropriately, the magistrate either asked him to sit down or to wait his turn to speak. We must note that Skinner's counsel also interrupted and argued with Appellee's counsel, either matching or going further than any "discourteous conduct" by Ellis' counsel. The magistrate often reminded both sides to let the other speak, to wait until the other finished, or to stop arguing and let the court rule. This conduct does not warrant the extreme remedy only allowed in circumstances where a fair trial is no longer possible and a new trial is required to meet the ends of justice.

{¶51} Skinner's fourth assignment of error is without merit.

{¶52} Fifth assignment of error: "The trial court erred in denying Appellant's Motion to Disqualify the Magistrate and abused its discretion in failing to hold a hearing on Appellant's Civ.R. 53(D)(6) Motion to Disqualify the Magistrate while permitting the magistrate to continue presiding over the Full Hearing until its completion."

14

{¶53} An appellate court uses the abuse of discretion standard when reviewing the trial court's decision on a motion to disqualify a magistrate. *Lamont v. Lamont*, 11th Dist. Geauga No. 2005-G-2628, 2006-Ohio-6204, ¶16.

{¶54} "Disqualification of a magistrate for bias or other cause is within the discretion of the court and may be sought by motion filed with the court." Civ.R. 53(D)(6).

{¶55} "A magistrate is presumed not to harbor bias or prejudice against any party in a proceeding,'the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity.'" *Melick v. Melick*, 9th Dist. No. 26488, 2013-Ohio-1418, 2013 WL 1458737, ¶ 9, quoting *Barnett-Soto v. Soto*, 9th Dist. Medina No. 02CA0011-M, 2003-Ohio-535, ¶ 23. A magistrate is biased or prejudiced against a party if she harbors "a hostile feeling or spirit of ill will * * * toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the [magistrate], as contradistinguished from an open state of mind which will be governed by the law and the facts." *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus.

{¶56} In her brief, Skinner fails to articulate an argument why the magistrate was biased and should have been disqualified. Skinner's brief simply states, "as 'reasonable and objective observer(s)' would harbor serious doubts as to her impartiality upon a review of the record in this case." After reviewing the record, we do not. The magistrate did not appear to harbor a "hostile feeling" or "spirit of ill will" towards either party or their attorneys. The trial court did not abuse its discretion in denying Skinner's motion.

{¶57} Skinner next asserts that the trial court erred by failing to hold a hearing on her motion to disqualify the magistrate while continuing to preside over the hearings. In

15

support of her argument, Skinner cites *Lingenfelter v. Lingenfelter*, , 2015-Ohio-4002, 43 N.E.3d 46 (9th Dist.). In *Lingenfelter*, the Ninth District Court of Appeals held that "the trial court abused its discretion in failing to hold a hearing to evaluate the merits of the motion to disqualify the magistrate." *Id.* at ¶ 17. *Lingenfelter* is distinguishable. The Ninth District did not render its holding because a hearing on a motion to disqualify a magistrate is always required, but because "[w]hile disqualification may not be ultimately warranted, the record in this case raises numerous questions that are not answered. Absent answers, there is evidence that could lead a reasonable and objective observer to 'harbor serious doubts about the [magistrate's] impartiality.'" *Id.* As we have noted, the record here is devoid of any reason why we should have serious doubts about the magistrate's impartiality, and Skinner suggests no unanswered questions that a hearing might answer.

{¶58} Indeed, Civ.R. 53(D)(6) does not require a court to hold a hearing on a motion to disqualify a magistrate. Similarly to Civ.R. 53(D)(6), under R.C. 2701.031(E), a trial judge who receives an affidavit of disqualification is not required to conduct a hearing prior to making his or her determination. *Toledo v. Emery*, Lucas App. No. L–01–1361, 2002–Ohio–2694, ¶ 46.

{¶59} There is also no law, statutory or otherwise, requiring the proceedings to wait until the motion has been decided and we will not require it without authority. Nor does Skinner cite any law to support her proposition.

{¶60} Skinner's fifth assignment of error is without merit.

{¶61} Sixth assignment of error: "The trial court erred and abused its discretion when it denied Appellant of an opportunity to be heard at the Full Hearing consistent with due process of law."

16

Case No. 2022-G-0009

**{¶62}** In her sixth assignment, Skinner contends that she was denied an opportunity to be heard at the full hearing because: (1) the court "prohibited" Skinner's attorney from cross-examining Ellis; and (2) the court "limited" Skinner's testimony during direct examination.

**{¶63}** Evid.R. 611(A) provides that a trial court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

**{¶64}** Evid.R. 611(B) provides: "Cross-examination shall be permitted on all relevant matters and matters affecting credibility."

**{¶65}** We review alleged errors regarding violations of Evid.R. 611 for abuse of discretion. *Ward v. Patrizi*, 11th Dist. No. 2010–G–2994, 2011–Ohio–5100, ¶ 37, citing *Marshall v. Scalf*, 8th Dist. No. 88708, 2007 Ohio 3667, ¶ 28–29.

**{¶66}** We first address Skinner's argument that the court "prohibited" her attorney from cross-examining Ellis.

**{¶67}** Skinner cites to the transcript to assert that her attorney should have been allowed to cross examine Ellis on "that in fact, Mr. Ellis was also responsible for some of these breakups." (T.p. 619). Ellis objected, arguing that the question was not relevant. The court sustained the objection to the question, reasoning that Ellis was a "victim of certain behaviors" and "is entitled to have certain areas not inquired into." (T.p. 629).

**{¶68}** The court did not abuse its discretion in sustaining Ellis' objection. Whether Ellis was responsible for any of the break-ups was not relevant and did not have any

17

tendency to make the existence of whether Skinner engaged in menacing by stalking more or less probable.

{¶69} Skinner also cites to the transcript where her attorney asked Ellis about the existence of Skinner's medical bills. Ellis objected, and the magistrate sustained again reasoning that "we are not going to put the victim in the eyes of the law on trial."

{¶70} The court did not abuse its discretion in sustaining Ellis' objection. Whether there were hospital bills and Ellis saw them was not relevant and did not have any tendency to make whether Skinner's engaging in menacing by stalking more or less probable.

{¶71} Skinner next argues that the court "limited" her testimony during direct examination. Skinner cites to her testimony on an incident she alleges occurred at Ellis' home in which she claims that he had threatened her with a hammer. Ellis objected and the Court sustained the objection, explaining: "The Court is not going to allow testimony against the victim of a Civil Stalking Protection Order under the facts as presented in this case."

{¶72} The court did not abuse its discretion in sustaining Ellis' objection. Skinner's testimony was not relevant to Ellis' petition; it did not have any tendency to make it more or less probable that Skinner engaged in menacing by stalking. The trial court did not err in confining testimony to only relevant matters that would demonstrate whether or not Ellis was entitled to a CSPO.

{¶73} It is also within the trial court's discretion to exclude unduly prejudicial evidence. Evid.R. 403(A).

{¶74} Skinner's sixth assignment of error is without merit.

18

Case No. 2022-G-0009

{¶75} Seventh assignment of error: "The trial court erred and abused its discretion by refusing to enforce Appellant's subpoena *duces tecum* thereby prohibiting Appellant from proffering evidence for appellate review as required by Evid.R. 103(A)(2)."

{¶76} Eighth assignment of error: "The trial court erred and abused its discretion by admitting as evidence a series of documentary exhibits that had been substantively altered and were not properly authenticated."

{¶77} Skinner's seventh and eighth assignments address the "manipulation" or alteration of evidence and the admissibility of that evidence. We will address those assignments together.

{¶78} Skinner contends that several documents admitted at the hearings had been altered or manipulated and should not have been considered. She further asserts that she was prejudiced by not receiving the unaltered evidence. Lastly, she contends that the evidence was not properly authenticated because she stated on the record that she did not have a recollection of the texts between herself and Ellis. Ellis asserted at trial that the evidence presented was Skinner's own evidence her former counsel provided to him and that he had received the evidence already altered. He further asserted that Skinner had provided the evidence during discovery and it was not his obligation to provide it back to her current attorneys.

{¶79} Ellis admitted at trial that some of the evidence appeared to be altered, but he asserted that the altered copies were the evidence he had received from Skinner's former attorney during discovery. Ellis further pointed out during his testimony which evidence was altered and how. The magistrate stated that it would not consider the altered evidence. Thus, the court did not abuse its discretion and Skinner was not

19

prejudiced when Ellis did not provide the evidence to her attorneys because the court did not consider that evidence.

**{¶80}** Skinner next contends that the trial court erred "by refusing to enforce Appellant's subpoena duces tecum" for the original unaltered evidence.

**{¶81}** The test to determine whether a subpoena duces tecum is unreasonable or oppressive is that " the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *In re Subpoena Duces Tecum Served Upon Attorney Potts*, 100 Ohio St.3d 97, 2003-Ohio-5234, 796 N.E.2d 915 (2003), ¶ 12.

**{¶82}** Skinner failed to show prong two that the evidence requested was not "otherwise procurable" with due diligence because the evidence was her own documents produced in discovery.

**{¶83}** Skinner also argues in her brief that the evidence was not properly authenticated. When asked on trial if she had seen the text messages before, Skinner said that she had not. "Statements from text messages are properly authenticated and are admissible as a party-opponent admission when the recipient of the messages identifies the messages as coming from the defendant." *State v. Bickerstaff*, 11th Dist. Ashtabula No. 2014–A–0054, 2015-Ohio-4014, ¶ 19. The text messages were properly

20

authenticated and admissible because Ellis, the recipient of the messages, identified them as coming from Skinner.

**{¶84}** Skinner's seventh and eighth assignments of error are without merit.

**{¶85}** Ninth assignment of error: "The trial court erred and abused its discretion by permitting Appellee's 'oral amendment' to his petition for CSPO to incorporate a request for electronic monitoring of Appellant, and by ultimately including a term of electronic monitoring in the judgment adopting CSPO."

**{¶86}** R.C. 2903.214(C)(2) provides that electronic monitoring may be ordered if the petitioner alleges at any time preceding the filing of the petition that the respondent engaged in conduct that would cause a reasonable person to believe that the health, welfare, or safety of the person to be protected was at risk, a description of the nature and extent of that conduct, and an allegation that the respondent presents a continuing danger to the person to be protected.

**{¶87}** R.C. 2903.214(E)(1)(b) provides that the court "upon its own motion * * * may order that the respondent be electronically monitored."

**{¶88}** Here, at the end of the September 14, 2021 hearing, Ellis moved for electronic monitoring, alleging that Skinner engaged in "witness intimidation." The court allowed both parties time to brief the issue before deciding. Ellis did not file a brief on the motion. The court granted the motion and ordered electronic monitoring.

**{¶89}** Ellis did not comply with R.C. 2903.214(C)(2) because he failed to allege in his oral motion that at any time preceding the filing of the petition, the respondent engaged in conduct that caused him to be at risk. However, under R.C. 2903.214(E)(1)(b), the

21

court "may" order electronic monitoring on its own motion. We find that the court did so here.

{¶90} Skinner's ninth assignment of error is without merit.

{¶91} The judgment of the Geauga County Court of Common Pleas is affirmed.

MATT LYNCH, J.,

FREDERICK D. NELSON, J., Retired, Tenth Appellate District, sitting by assignment,

concur.

22